Taliaferro, J.
The defendants are sued for $10,000 on a policy of insurance taken with the company upon the hull, engines, furniture and appurtenances of the steamboat Texarkana, for one year from the seventeenth of December, 1869, to the seventeenth of December, 1870. It seems the boat insured sunk in Red river, about the first of September, 1870, from the effects of a collision that occurred between the Texarkana and the steamboat Era No. 9. Tbe boat and all her appurtenances were treated as a total loss, and abandoned to tbe insurers.
Tbe answer is a general denial. The plaintiff had judgment for the amount claimed and defendants have appealed.
This case turns entirely on questions of fact. It is urged in defense that the accident occuired from a violation of rule No. 6 of the rules and regulations adopted by tbe board of supervising inspectors in 1865, under tbe provisions of the twenty-ninth section of the act of *27 Congress “for tile better security of the lives of passengers on board of vessels propelled in whole or in part by steam.”
The rule sixth is in these words: “When any steamer, whether ascending or descending is nearing a short bend or point, where from any cause a steamer approaching in an opposite direction can not be seen at a distance of six hundred yards of that bend or point, shall give a signal of one long sound of his steam whistle, as a notice to any steamer approaching; and if theTe should be any approaching steamer within hearing of such signal, it shall be the duty of the pilot thereof to answer such signal by one long sound of his steam whistle, when both boats shall be navigated with the proper precautions as required by the preceding rule.” *
. The defendants assume that at the place where the collision happened there is a short bend or point, where it is made the duty of pilots to sound their steam whistles as signals of the approach of boats according to the rule six; just quoted. This is required to be done at such short bends or points where a boat can not be seen at the distance of six hundred yards. The evidence is that neither of the pilots of these boats sounded his whistle until the boats were too near each other for the collision to be avoided, the regulations by law requiring that signals shall be given in approaching short bends and points in ample time to have the boats moving in their proper places so as to pass each other safely. Defendants hold that the loss of the insured boat was the result of the culpable neglect and want of skill in the pGot and managers of the Texarkana, as well as that of the other boat, and that they are not bound under the policy.
But the rules and regulations of the board of supervising inspectors do not specify and particularize the short bends and points at which these precautionary signals are to be made. In the absence of such specification by the board it would seem then to become a matter within the judgment and discrimination of the navigators of the rivers, to determine the places, where by the rules and regulations governing pilots, signals are to be given. Accordingly we find from the evidence that the point where the collision in this case occurred, never had been considered as a place coming within the requirements of rule No. six; and all the Red river pilots who testified in this case, and there were some half dozen or more of them, were unanimous in saying they never knew or heard of the steam whistle being used at the point in question as being required by rule six. A diagram of that part of the river where the accident happened is given in connection with the evidence of one of these pilots. It would clearly appear from this diagram and the general drift of the. testimony-that at the place where the collision took place, there is not a short bend or point “where, *28 from any cause a steamer approaching in an opposite direction, cas not be seen at a distance of six hundred yards.” The diagram represents a gradual curve in the river, called technically by one or two of the witnesses a “kink.” It does not present an abrupt bend or turning of the river constituting “ a short bend or point.”
It appears that after this accident happened an investigation of the subject was made before the United States inspectors under the act of Congress. A transcript of the proceedings before the inspectors, embracing- the evidence taken was offered on the part of the defendants to prove rem ipsam. This was objected to by the plaintiff as res inter alios, and irrelevant. The court sustained the objection to that extent, but admitted it for the purpose only of contradicting the statements of witnesses. A bill of exceptions was .taken by the defendants. We think the ruling of the court correct.
The action taken by the board of inspectors could not bind the plaintiff, who was not a party to it. That portion of the testimony let iu, shows some discrepancy between the evidence given by Kountz, the pilot on duty aboard the Texarkana at the time of the collision, and that which he gave previously before the board of inspectors, but as against the mass of evidence introduced in court on the part of the plaintiff, it can have but little effect. We regard the evidence as establishing beyond doubt that at the time of the collision, the Texarkana was on the proper side of the river for an ascending boat to be, and that she was near the shore. This last fact is well established. The force with which she was struck threw her against the shore. Although the river at the place where the accident took place was narrow, there was room for the other boat to have passed without collision had she been further out in the stream.
We are of the opinion that the plaintiff’s case is made out. There are two other bills of exceptions taken by defendants, but it is not important to the decision of this case that we should pass upon them.
Judgment affirmed.